```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
NATIONAL UNION FIRE INSURANCE COMPANY    :
OF PITTSBURGH, PA.,                      :
                                         :    06 Civ. 7135 (JSR)
             Plaintiff,                  :
                                         :    MEMORANDUM ORDER
         -v-                             :
                                         :
VECTOR GROUP, LTD.,                      :
                                         :
             Defendant.                  :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

By Order dated November 9, 2006, the Court granted the motion of plaintiff National Union Fire Insurance Company ("National Union") to stay the arbitration of claims arising under an insurance policy issued to the Brooke Group, Ltd. ("Brooke") and denied the motion of Brooke's successor in interest, defendant Vector Group, Ltd. ("Vector"), to compel arbitration of those same claims. This Memorandum Order states briefly the reasons for those determinations.

By way of brief background, defendant Vector currently controls two corporations -- Brooke and New Valley LLC ("New Valley"). In March, 2005, a settlement was reached in a Delaware state derivative action brought on behalf of New Valley shareholders alleging among other things that Brooke had utilized its stake in New Valley to engage in an improper transaction with New Valley. Under the terms of the settlement, Vector, as Brooke's successor in interest, agreed to pay New Valley $7 million, and New Valley, as nominal defendant in the derivative suit, agreed to pay $2.15 million in legal fees to counsel for the derivative suit plaintiffs.

During the time period relevant to the derivative action, Brooke and New Valley held separate D&O insurance policies issued by National Union (respectively, the "Brooke policy" and the "New Valley policy"). Although New Valley and Brooke are now both under Vector's control, at the time these policies were negotiated and issued Brooke and New Valley were distinct corporate entities, although, as noted, Brooke owned some shares in New Valley. Following the settlement, New Valley sought coverage under the New Valley policy for reimbursement of $2.15 million of the derivative plaintiffs' legal fees, and Vector sought coverage under the Brooke policy for its $7 million dollar payment to New Valley. National Union denied coverage as to both claims but paid roughly $100,000 to New Valley for its legal fees.

The insurance policy National Union issued to New Valley, purchased at a time when Brooke held only a minority stake in New Valley, contains an arbitration provision. The insurance policy National Union issued to Brooke contains no such provision. Nonetheless, Vector, in an arbitration action it commenced jointly with New Valley in August, 2006 seeking coverage on New Valley's behalf under the New Valley policy, added claims on Brooke's behalf seeking coverage under the Brooke policy.

In response, National Union initiated this lawsuit and promptly moved to stay arbitration of the Brooke claims. Although conceding that claims under the Brooke policy were triggered by the same March, 2005 settlement of the derivative lawsuit as the New

Valley claims that are properly before the arbitration panel, National argued that inasmuch as the Brooke insurance policy does not contain an express arbitration clause and National Union has not otherwise given its consent to the arbitration of the Brooke claims, the Brooke claims are not properly before the arbitrators.  Vector, for its part, cross-moved to compel arbitration of the Brooke claims.

The parties agree that if the Brooke claims are plainly not subject to arbitration, their inclusion in the new Valley arbitration should be enjoined. See, e.g., Int'l Trust Co. of Bermuda, Ltd. v. Fahnstock & Co., Inc., 1995 WL 606275, at *3 (S.D.N.Y. Oct. 12, 1995)("A party that has not agreed to arbitrate a dispute will suffer irreparable harm if . . . forced to submit to arbitration."); Tellium Inc. v. Corning Inc., 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004)(same). The parties also agree, however, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 223 (2d Cir. 2001) (internal quotations and citations omitted).

But here there is no doubt: the Brooke insurance contract contains no arbitration provision whatsoever, and the arbitration clause in the New Valley insurance policy belies any suggestion that it was intended to cover Brooke.  Specifically, the arbitration clause in the New Valley policy states:

> It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this

3

>policy, including any determination of the amount of Loss, shall be subject to the dispute resolution process ("ADR") set forth in this clause.
>
>Either the Insurer and the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

Complaint, Ex. B-3 ("New Valley Policy") (emphasis supplied).  As defined under the New Valley policy, the "Insurer" is National Union and the "Insureds" are New Valley and its directors.  In other words, neither Vector nor Brooke is an "Insured" under "this policy."  As for the argument that the Brooke coverage dispute may in some vague way be said to have arisen "in connection with" the New Valley coverage dispute, such an argument would deny any operative meaning to the fact that Brooke's own insurance policy with National Union contains no arbitration clause.

In other words, when National Union entered into two separate but roughly contemporaneous policies, one with New Valley containing an arbitration clause and one with Brooke containing no arbitration clause, it contractually agreed it would have to arbitrate New Valley's coverage disputes and would not have to arbitrate Brooke's coverage disputes.  Any other interpretation would deny National Union the benefits of its respective bargains.

For similar reasons, there is no merit to Vector's alternative argument that arbitration of the Brooke claims should be permitted to proceed because such claims are "intertwined" with the New Valley claims in a way that "estops" National Union from

4

resisting arbitration.  "Intertwinedness" per se does not create estoppel.  Rather, to warrant estoppel, the interrelatedness must reflect some underlying equitable rationale as to why estoppel makes sense.  See, e.g., Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995); Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98 (2d Cir. 1999); see generally Astra Oil Co. v. Rover Navigation, Ltd., 344 F.3d 276, 281 (2d Cir. 2003); Choctaw Generation L.P. v. Am. home Assurance Co., 271 F.3d 403 (2d Cir. 2001).

    Given the fact that the Brooke policy contains no arbitration clause, Vector can offer no reason why it would in any way be equitable to force National Union to arbitrate the Brooke claims simply because National Union agreed to arbitrate the New Valley claims.  Cf. Oilmar Co. v. Energy Transp., Ltd., 2006 U.S. Dist. LEXIS 35352, at *10 n.8 (D. Conn. May 31, 2006).  At bottom, what Vector seeks is to use the equitable doctrine of estoppel to gain an undeserved, inequitable windfall, for were it not for the happenstance of Brooke's later acquisition by New Valley's corporate parent, the notion of a joint arbitration would be absurd.  Cf. Motorola Credit Corp. v. Uzan, 274 F. Supp. 2d 481, 506 ("[S]ince the parties to this lawsuit did not agree to arbitrate any dispute between them, and since no basis exists in law or equity for allowing them to invoke [the signatory's] agreement to arbitrate, defendants' motion to compel arbitration must be denied.").

Accordingly, for the foregoing reasons, the Court's Order dated November 9, 2006 granted National Union's motion to stay arbitration of the Brooke claims and denied Vector's motion to compel arbitration of those same claims.

The parties are hereby are hereby directed to jointly call Chambers no later than June 29, 2007 to schedule such further proceedings as required to complete this case.

SO ORDERED.

                                                JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       June 27, 2007